UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH GRAGG, | Case No. 15-CV-2718 (DWF/FLN) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| C. NICKRENZ, Warden, | |
| Respondent. | |

Petitioner Kenneth Gragg, a federal prisoner, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. In his habeas petition, Gragg alleges that the Federal Bureau of Prisons ("BOP") abused its discretion by denying his request under 18 U.S.C. § 3621(e) for a reduction of time in custody following his completion of a substance-abuse program. But lawfully promulgated federal regulations prohibit the BOP from reducing the time in custody of federal prisoners incarcerated for illegally possessing firearms, and thus the BOP could not have abused its discretion in denying Gragg relief. Accordingly, this Court recommends that Gragg's habeas petition be summarily dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

Gragg pleaded guilty "to two counts of possession of methamphetamine with intent to distribute, in violation 21 U.S.C. § 841(a)(1) and (b)(1)(C), and possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2)."

---

[1]Rule 4 provides that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Although Gragg seeks relief under § 2241, the Rules Governing Section 2254 Cases nevertheless apply here. *See* Rule 1(b).

*United States v. Gragg*, 576 Fed. App'x 656, 657 (8th Cir. 2014) (per curiam). As a result of that conviction, Gragg was sentenced to a 46-month term of imprisonment. *See* Petition at 2 [ECF No. 1]. Gragg's conviction was affirmed on appeal, and he remains incarcerated for those offenses. *See Gragg*, 576 Fed. App'x at 657-58.

Broadly speaking, the BOP has wide discretion to place federal prisoners at appropriate facilities. Under 18 U.S.C. § 3621(b),

> [t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering —
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;
>
> (3) the history and characteristics of the prisoner;
>
> (4) any statement by the court that imposed the sentence —
>
> > (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> >
> > (B) recommending a type of penal or correctional facility as appropriate; and
>
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

Although § 3621(b) commits decisions about the location of federal prisoners to the BOP, that agency's discretion is informed — or, in some cases, circumscribed — by other federal laws and regulations. As relevant to this case, 18 U.S.C. § 3621(e)(1) provides that "every prisoner with a substance abuse problem [shall] have the opportunity to participate in appropriate substance abuse treatment," and § 3621(e)(2)(B) provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."

Gragg, an inmate at the Federal Prison Camp in Duluth, Minnesota, completed the BOP's Residential Drug Abuse Program ("RDAP") in May 2015. *See* ECF No. 1-1 at 2-3. Despite his completion of the RDAP, however, Gragg was denied early release by the BOP on account of his conviction for illegal possession of a firearm. Gragg now seeks habeas relief, asking the Court to require the BOP to reconsider its decision.

Gragg offers several arguments for why the BOP's denial of an early release was illegal. None of those arguments holds up to scrutiny, however.

*First*, Gragg contends that the firearm crime for which he was convicted — possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) — is a nonviolent offense, and is therefore not a basis for the BOP to deny him an early release following completion of the RDAP. Gragg's argument is not entirely fleshed out in his petition, but in his administrative appeals, Gragg argued that the corollary terms "violent felony," as used in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e); and "crime

of violence," as used in the career-offender enhancement found in the United States Sentencing Guidelines, U.S.S.G. § 4B1.2, do not include mere illegal possession of a firearm.

Gragg is correct, though this does not get him as far as he thinks. The ACCA provides that a person who violates 18 U.S.C. § 922(g) and "has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be fined under this title and imprisoned not less than fifteen years . . . ." 18 U.S.C. § 924(e)(1). The ACCA expressly defines "violent felony," in relevant part, as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that —
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).[2] Mere illegal possession of a firearm does not have "an element the use, attempted use, or threatened use of physical force against the person of another," is not "burglary, arson, or extortion, involves use of explosives," and does not otherwise involve "conduct that presents a serious potential risk of physical injury to another . . . ." *See, e.g.*,

---

[2]The final clause of 18 U.S.C. § 924(e)(2)(B)(ii) — "or otherwise involves conduct that presents a serious potential risk of physical injury to another" — was recently struck down as unconstitutionally vague by the Supreme Court. *See Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* does not effect this matter, because (as explained below) the regulations at question in this case are not coterminous with the ACCA, and because the BOP is permitted to deny early release to nonviolent offenders.

*United States v. Oliver*, 20 F.3d 415, 418 (11th Cir. 1994); *United States v. Doe*, 960 F.2d 221, 222 (1st Cir. 1992). That crime is therefore not a "violent felony" under the ACCA.

Relatedly, § 4B1.2 of the Sentencing Guidelines — which governs whether the career-offender enhancement applies to a defendant's sentence — defines "crime of violence" almost identically to the definition of "violent felony" definition of the ACCA:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

What is implicit in the definition of "violent felony" is explicit in the application notes to § 4B1.2, which make clear that "'[c]rime of violence' does not include the offense of unlawful possession of a firearm by a felon . . . ."[3] U.S.S.G. § 4B1.2, application note 1.

But all this is irrelevant. For one thing, there is no indication that the term "nonviolent offense" in § 3621 was meant to track the definition of "violent felony" in the ACCA or the term "crime of violence" in the Sentencing Guidelines.[4] Indeed, "'reliance on the definition of crimes

---

[3]An exception is made for the possession of firearms "described in 26 U.S.C. § 5845(a)," which is in fact treated as a crime of violence under the Sentencing Guidelines. U.S.S.G. § 4B1.2, application note 1. This Court assumes, for purposes of this Recommendation, that the firearm possessed by Gragg was not one of the kind described in § 5485(a), although the question is beside the point.

[4]Another similar definition of "crime of violence" can be found in 18 U.S.C. § 16. "With
(continued...)

-5-

of violence under the Sentencing Guidelines ignores the differing rationale behind § 3621.'" *Ellis v. Terrell*, 455 F. Supp. 2d 1230, 234 (D. Kan. 2006) (quoting *Taylor v. U.S. Bur. of Prisons*, 172 F.3d 879 (10th Cir. 1999) (unpublished table disposition)). It is entirely reasonable that there may be daylight between (on the one hand) the terms "violent felony" in the ACCA and "crime of violence" in the Sentencing Guidelines, and (on the other hand) the term "nonviolent offense" in § 3621, such that certain crimes are both *not violent* for the purposes of the former and *not nonviolent* for the purposes of the latter.

Even more importantly, though, the BOP is not required to grant early release to *all* defendants who are incarcerated for nonviolent offenses and complete the RDAP. "If those prerequisites are met, the Bureau 'may,' but also may *not*, grant early release." *Lopez v. Davis*, 531 U.S. 230, 239 (2001) (quoting 18 U.S.C. § 3621(e)(2)(B)). "Beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a nonviolent offender who successfully completes drug treatment, Congress has not identified any further circumstance in which the Bureau either must grant the reduction, or is forbidden to do so." *Id*. at 242. The BOP has "filled the statutory gap" through § 550.55, which (in relevant part) prohibits the early release of offenders incarcerated for firearm offenses, including nonviolent firearm offenses. *Id*. It is § 550.55, not the ACCA, or the Sentencing Guidelines, or case law interpreting the ACCA

---

⁴(...continued)
few exceptions . . . Title 18 relies on" this statutory definition of "crime of violence." *King v. Morrison*, 231 F.3d 1094, 1097 (8th Cir. 2000). Still, § 3621 does not use the term "crime of violence," but the term "nonviolent offense." It would have been easy for Congress to incorporate "crime of violence" as defined in § 16 into the text of § 3621(e)(2)(B) — e.g., "The period a prisoner not convicted of a crime of violence remains in custody . . ." — but it did not do so.

or the Sentencing Guidelines, which applies here. And under the plain language of § 550.55(b)(5)(ii), Gragg is not eligible for early release.

Next, Gragg argues that the factual circumstances of his offense render his crime nonviolent. Gragg protests that the firearm for which he was convicted was discovered unloaded in his home, that no ammunition was found nearby, and that the only reason he had possession of the firearm at all was to keep it out of the hands of "a woman who was threatening to use it in a suicide." ECF No. 1-1 at 1. Again, though, all this is irrelevant. The BOP may deny — and may even *categorically* deny — early release to defendants incarcerated for specified nonviolent offenses. *Lopez*, 531 U.S. at 539-44. The BOP has effectuated this authority through § 550.55, which precludes *any* defendant who is incarcerated for *any* offense that involves "the carrying, possession, or use of a firearm" from being granted early release. 28 C.F.R. § 550.55(b)(5)(ii). No exception is made for relatively benign firearm offenses, or for firearm offenses that can be proved by the defendant to have been nonviolent, or for offenses that involve only certain types of firearms. Gragg unquestionably committed an "offense that involved the carrying, possession, or use of a firearm."[5] 28 C.F.R. § 550.55(b)(5)(ii); *see Gragg*, 576 Fed. App'x at 657. This ends the factual inquiry.

---

[5]Gragg suggests in his habeas petition that his firearm conviction should be overturned, as the district court should have suppressed evidence resulting from the search of his home (which included the firearm for which he was convicted). The Eighth Circuit has already affirmed the legality of the search at issue. *See Gragg*, 576 Fed. App'x at 657-58. Moreover, the challenge to the legality of the search amounts to a challenge to the underlying conviction in a collateral proceeding, which may not be raised in a habeas petition in the district of incarceration. *See* 28 U.S.C. § 2255(e). This Court has no legal authority to find, and no factual basis upon which to find, that the search at issue was unlawful.

Finally, according to Gragg, § 3621 requires that the individual circumstances of the defendant be considered in all cases, and any regulations purporting to create categorical exclusions are therefore invalid. This argument is squarely foreclosed by *Lopez*:[6]

> We also reject Lopez's argument . . . that the [BOP] must not make categorical exclusions, but may rely only on case-by-case assessments. Even if a statutory scheme requires individualized determinations, which this scheme does not, the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority. The approach pressed by Lopez — case-by-case decisionmaking in thousands of cases each year — could invite favoritism, disunity, and inconsistency. The Bureau is not required continually to revisit issues that may be established fairly and efficiently in a single rulemaking proceeding.

531 U.S. at 243-44 (quotations and citations omitted).[7]

None of Gragg's arguments entitle him to relief. Accordingly, this Court recommends that his habeas petition be denied, and that this action be dismissed pursuant to Rule 4 of the Rules Governing Section 2254 Cases.

---

[6]Also meritless is Gragg's suggestion — which is found in his administrative-appeal materials, though not his habeas petition — that § 550.55 was improperly promulgated in violation of the Administrative Procedure Act, 5 U.S.C. § 553. *See Giannini v. Fed. Bur. of Prisons*, 405 Fed. App'x 96, 97 (8th Cir. 2010) (per curiam). Nor is the categorical exclusion of prisoners incarcerated for firearm offenses a violation of the equal protection clause, at least in the absence of an allegation that a similarly situated prisoner (i.e., a prisoner guilty of a firearm offense) has been released by the BOP under § 3621(e). *See Torres v. Chapman*, 359 Fed. App'x 459, 462 (5th Cir. 2009); *cf. Zacher v. Tippy*, 202 F.3d 1039, 1046 (8th Cir. 2000).

[7]*Jones v. Zenk*, which is cited repeatedly in Gragg's habeas petition and accompanying materials, is not in disagreement. 495 F. Supp. 2d 1289, 1302 (N.D. Ga. 2007) (quoting *Lopez*, 531 U.S. at 243-44). Instead, *Jones* concerned the validity of an entirely separate regulation. *See id*. at 1304-09; 28 C.F.R. § 570.21(a).

RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. Petitioner Kenneth Gragg's petition for a writ of habeas corpus [ECF No. 1] be DENIED.

2. This action be DISMISSED.

Dated: July 30, 2015          s/Franklin L. Noel
Franklin L. Noel
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.